IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ANDREW WHALEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 4:25-cv-00488-DGK |
| | ) |
| ORACLE HEALTH GOVERNMENT | ) |
| SERVICES, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

This case arises from Plaintiff Andrew Whaley's alleged injuries from taking the allergy medication montelukast. Plaintiff alleges negligence and negligent misrepresentation against Defendants Oracle Health Government Services ("OHGS"), Cerner Corporation ("Cerner Corp."), and Cerner Innovation ("Defendants") for Defendants' alleged failure to adequately warn Plaintiff of potential neuropsychiatric side effects.

Now before the Court is Defendants Motion to Dismiss for failure to state a claim. ECF No. 8. For the reasons stated below, Defendants' motion is DENIED.

**Standard of Review**

Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing the pleader is entitled to relief." A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, a court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to" the plaintiff. *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.* Rule 8 "does not require detailed factual allegations" to show facial plausibility, "but it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* "Asking for plausible grounds to infer [a defendant's liable conduct] . . . simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" thereof. *Twombly*, 550 U.S. at 556.

In reviewing the complaint, a court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). A court generally ignores materials outside the pleadings but may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings. *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

**Background**

As alleged in the Complaint, ECF No. 1, Defendants OHGS, Cerner Corp., and Cerner Innovation are owned by Oracle Corporation. Oracle Corporation is the parent company of OHGS and acquired Cerner Corp. through a stock purchase on June 8, 2022. Cerner Innovation is a wholly-owned subsidiary of Cerner Corp. and the survivor of a merger between Cerner Innovation and Cerner Multum, LLC, in December 2022.

2

Plaintiff, a U.S. Naval Commander and Navy pilot, was prescribed the allergy medication montelukast (the generic form of Singulair) on November 6, 2019, by Navy medical personnel at the Naval Air Station in Lemoore, California, to treat his allergy symptoms. He filled the prescription on the same day at the base pharmacy.

When he filled the prescription, Plaintiff received version 13.01 of the montelukast monograph, a plain-language description of the drug allegedly produced by Defendants, which instructs users of montelukast to "Call your doctor at once if you have: unusual changes of mood or behavior" or other physical reactions and otherwise warns of possible side effects like stomach pain, diarrhea, fever, flu-like symptoms, cold symptoms, headache, and bed-wetting or loss of bladder control in children. The monograph contains the disclaimer, "This is not a complete list of side effects and others may occur." It bears a copyright attributed to Cerner Multum, Inc., for the years 1996–2015 and lists a revision date of December 23, 2014. Plaintiff and his wife read the monograph and relied on it before he took montelukast.

Plaintiff took one dose of montelukast per day from November 6 to November 8, 2019. Starting the evening after the first dose and continuing with increasing intensity the next three days, Plaintiff experienced restlessness, insomnia, mild anxiety, unexplainable energy, negative energy bursts, and inability to focus.

On November 9, 2019, Plaintiff was admitted to the emergency room of a local hospital with symptoms of confusion, hallucinations, disorientation, catatonia, self-harm, and detachment. He was transferred to the Veterans Affairs Hospital in Fresno, California, until November 18, 2019. On January 20, 2020, Plaintiff was placed on non-flying limited-duty status and was transferred to an administrative position at the Naval Air Station, Lemoore, California.

Between February 20 and October 11, 2020, Plaintiff was hospitalized on multiple occasions for psychiatric care and, starting in March 2020, participated in in-patient and out-patient mental health treatment.

In August 2021, Plaintiff's psychiatrist indicated that Plaintiff suffered from "substance-induced bipolar disorder" and noted that "provisional etiology of the [neuropsychiatric] episode could be Singulair [montelukast] which is known to trigger psychotic disorders." Plaintiff avers he has had no prior mental health issues.

In 2015, Cerner Corp. contracted with the U.S. Department of Defense to provide an electronic medical records system, MHS Genesis, the system through which Defendants allegedly produced the montelukast monograph version 13.01 that Plaintiff read. After Oracle Corporation's acquisition of Cerner Corp. in 2022, OHGS assumed responsibility for the MHS Genesis contract retroactively to 2018.

Earlier versions of the montelukast monograph issued between 2008 and 2012 (versions 6.08–12.02) contained references to possible neuropsychiatric side effects consistent with the FDA-approved labelling for montelukast. The various monographs included references to mood or behavior changes, aggressive behavior, bad/vivid dreams, anxiety, depression, hallucinations, irritability, restlessness, suicidal thoughts and actions (including suicide), or thoughts about suicide, tremors, shaking, and trouble sleeping.

The montelukast monograph Plaintiff read, version 13.01, was released December 23, 2014, and contains only references to the possible side effects of "unusual changes in mood or behavior" and other, exclusively somatic, reactions. In March 2020, an updated montelukast monograph (version 14.01) once again contained references to the neuropsychiatric side effects consistent with FDA-approved labelling.

Plaintiff alleges negligence (Count I) and negligent misrepresentation (Count II) against Defendants OHGS, Cerner Corp., and Cerner Innovation for Defendants' alleged failure to include accurate warnings of the possible neuropsychiatric side effects of montelukast on the monograph they authored.

**Analysis**

The Court exercises diversity jurisdiction in this case. "Federal district courts must apply the choice of law rules of the state in which they sit when jurisdiction is based on diversity of citizenship." *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991) (citation omitted). Missouri applies the law of the state with "the most significant relationship to the occurrence and the parties." *Thompson by Thompson v. Crawford*, 833 S.W.2d 868, 870 (Mo. 1992). Here, that means California law applies, as both parties agree.[1]

Defendants argue (1) Plaintiff alleges no substantive allegations against Defendants OHGS or Cerner Corp.; (2) Plaintiff has not pled and cannot plead that Defendant Cerner Innovation owed him a legal duty (Count I): (3) Plaintiff has not pled and cannot plead that Defendant Cerner Innovation made an affirmative false statement to him (Count II); and (4) Plaintiff's complaint is barred by *res judicata*.

### I. Plaintiff alleges sufficient facts to state a plausible claim against all corporate defendants.

Defendants concede that Cerner Innovation is properly named, so the Court will only address OHGS and Cerner Corp. At the pleading stage, plaintiffs are "not required to . . . describe in detail [a defendant's] corporate structure, which" may not be "within their ability to know so early in the litigation." *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961 (8th

---

[1] Plaintiff's caveat about potential conflicts between the laws of California and those of Missouri, where Defendants have their principal places of business, does not affect the analysis here. *See* ECF No. 12 at 4–5.

Cir. 2015). But a plaintiff must still "allege facts sufficient to state a plausible claim" against each defendant. *Id.*

Plaintiff has satisfied that burden here. Plaintiff alleges, "Since its acquisition of Defendant Cerner in a stock purchase, Oracle (i.e., OHGS) has conducted business and derived substantial revenue from its production, advertising, distributing, selling, and marketing of the Multum database and the monographs derived from that information . . . ." ECF No. at ¶ 20. Similarly, the Complaint alleges that OHGS's parent company, Oracle Corporation, "has operated the Multum business and, starting in 2018, retroactively has taken over performance of the MHS Genesis contract with the federal government . . . ." *Id.* at ¶ 22. As to Cerner Corp., the Complaint alleges it "has conducted business and derived substantial revenue from its production, advertising, distributing, selling and marketing of the Multum database and the monographs derived from that information . . . ." *Id.* at ¶ 23. More generally, Plaintiff alleges "[w]ritten montelukast monographs . . . were created, authored, written, edited, provided and made available . . . by Defendants as part of the MHS Genesis system." *Id.* at ¶ 151.

Construed liberally and with all reasonable inferences from the facts drawn in Plaintiff's favor, these allegations are sufficient at this stage to implicate OHGS and Cerner Corp. in Plaintiff's claims. Plaintiff is not expected before discovery to understand Oracle Corporation's internal structure as it pertains to the drug information on the Multum database and the production of the montelukast monograph at issue here.

### II. Plaintiff has plausibly alleged that Defendants assumed a duty of care when they undertook to provide montelukast monographs.

"The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Burns v. Neiman Marcus Grp.*, 173 Cal. App. 4th 479, 487 (2009). Under the learned

intermediary doctrine, drug manufacturers owe a duty of care to prescribing physicians (the learned intermediaries) but not directly to patients. *See Carlin v. Superior Ct.*, 920 P.2d 1347, 1354 (Cal. 1996).

Defendants argue the learned intermediary doctrine's logic extends to the producers of drug monographs, such that Defendants owed no duty to Plaintiff. Plaintiff argues California law recognizes a duty owed by providers of monographs to patients under the general tort principle of negligent undertaking. ECF No. 1 at ¶ 158; *see Artiglio v. Corning Inc.*, 957 P.2d 1313, 1317 (Cal. 1998) ("It is ancient learning that one who assumes to act . . . may thereby become subject to a duty of acting carefully, if he acts at all.") (citation and alteration omitted).

Plaintiff has the better argument. In *Hardin v. PDX, Inc.*, the California Court of Appeals held that a negligent undertaking theory in the drug monograph context is cognizable under California law, because an entity involved in the production of a drug monograph may assume a duty of care when it undertakes to be involved in that production. 173 Cal. Rptr. 3d 397, 405–06 (Cal. Ct. App. 2014). Like the plaintiff in *Hardin*, Plaintiff has plausibly alleged that Defendants assumed a duty of care to him when they undertook to "produc[e], advertis[e], distribut[e], sell[], and market[] . . . the Multum database and the monographs derived from that information." This is especially true at the pleading stage, where Plaintiff does not fully understand Defendants' corporate structure. But by finding a duty owed at this stage, the Court is not saying Defendants could not prevail on a more fully developed record later in the case.

### III. Plaintiff has adequately alleged misleading half-truths that could amount to affirmative false statements under California law.

"Negligent misrepresentation is the assertion of a false statement, honestly made in the belief it is true, but without reasonable ground for such belief." *Cnty. of Kern v. Sparks*, 56 Cal. Rptr. 3d 551, 557 (Cal. Ct. App. 2007) (citation omitted). "[A] positive assertion is required; an

7
Case 4:25-cv-00488-DGK    Document 28    Filed 01/26/26    Page 7 of 10

omission or an implied assertion or representation is not sufficient." *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 70 Cal. Rptr. 3d 199, 213 (2007) (citation omitted). However, a complaint that "adequately allege[s] misleading half-truths [can] invoke an exception to the general rule excluding liability [for negligent misrepresentation] for mere nondisclosure . . . ." *Randi W. v. Muroc Joint Unified Sch. Dist.*, 929 P.2d 582, 593 (Cal. 1997) (holding "defendants . . . made positive assertions . . ., assertions [that were] deceptively incomplete because defendants knowingly concealed material facts . . . ." *Id.* at 592.).

Defendants argue Plaintiff has only alleged "omissions," not an affirmative statement as required to support a negligent misrepresentation claim. But a "misleading half-truth" can amount to an affirmative assertion if the complaint adequately alleges one.

Plaintiff's complaint does so. The complaint clearly states what was allegedly known or should have been known by Defendants about the potential neuropsychiatric side effects of montelukast. *See* Complaint, ECF No. 1 at ¶¶ 76–107. It also clearly alleges that Defendants included warnings about some side effects on its monographs but removed references to neuropsychiatric side effects from their montelukast monograph when they published version 13.01, the version Plaintiff allegedly received and relied upon. *Id.* at ¶ 95. This allegedly knowing removal could amount to the kind of "deceptively incomplete" assertion and "conceal[ment of] material facts" that would support a negligent misrepresentation claim under California law.

### IV. Plaintiff's claims are not barred as res judicata.

"Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *Mycogen Corp. v. Monsanto Co.*, 51 P.3d 297, 301 (Cal. 2002). "When the prior judgment is one entered in a

diversity case, the preclusive effect of the prior judgment is determined by the preclusion rules of the forum that provided the substantive law underlying that judgment." *Klipsch, Inc. v. WWR Tech., Inc.*, 127 F.3d 729, 733 (8th Cir. 1997). Here, Plaintiff filed a prior lawsuit against Merck, the manufacturer of montelukast, and 100 Doe Defendants in California state court under California law. The case was then removed to federal court in the Southern District of California. ECF No. 9 at 2. California law therefore determines the claim preclusive effect of the judgment in that case.

Defendants argue Plaintiff's suit against them is barred as res judicata because Plaintiff's prior lawsuit against Merck and 100 Doe Defendants was resolved by settlement and dismissal of "the entire action, including all claims stated therein against all parties, with prejudice." ECF No. 9 at 13. Defendants argue they were among the 100 Doe Defendants so the claims against them here are barred.

The argument fails. Defendants cite to no clear California law to support the argument that claims against "Doe defendants" who were never named or personally served in a prior lawsuit are barred as res judicata when that prior suit has been resolved on the merits. On the record before the Court at this stage, California law appears to be to the contrary: "Although 10 Does were named as defendants, no person or entity was served as a Doe. Thus, [the named] defendant . . . was the only party defendant to the action." *King v. King*, 99 Cal. Rptr. 200, 202 (Cal. Ct. App. 1971); *see also Hayes v. Rojas*, No. 1:20-CV-01820-NONE-JLT, 2021 WL 5356471, at *4 (E.D. Cal. Nov. 17, 2021) ("[U]nless a Doe defendant has been served or voluntarily appears in the previous lawsuit, they are not a party and therefore cannot be bound by res judicata.").[2] Plaintiff never substituted the Defendants here for the Doe Defendants in his

---

[2] The facts and legal analysis in Defendants' one citation, *Mendia v. Cnty. of Alameda*, No. C 10-04453 JSW, 2011 WL 13243801 (N.D. Cal. Aug. 4, 2011), appear to be too particular and limited to overcome this rule.

prior lawsuit. They were not served and did not voluntarily appear. Therefore, they do not appear to have been parties to that lawsuit under California law, and Plaintiff's claims against them are not barred. Again, in finding Plaintiff's claims not barred as res judicata at this stage, the Court is not saying that Defendants could not prevail on a more developed record later in the case.

## Conclusion

For the reasons discussed above, the motion is DENIED.

**IT IS SO ORDERED.**

Date: January 26, 2026       /s/ Greg Kays
                GREG KAYS, JUDGE
                UNITED STATES DISTRICT COURT